IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HILARIO VELASQUEZ and SARAH GARRETT,<br><br>Plaintiff,<br><br>vs.<br><br>SGT. JOHN PEDEN, in his individual and official capacities, DOES 1 – 5, in their individual and official capacities, and CITY OF COZAD, a Nebraska political subdivision,<br><br>Defendants. | Case No. 8:17-cv-265<br><br>**COMPLAINT** |

Hilario Velasquez and Sarah Garrett, Plaintiffs in the above-captioned matter, by and through her counsel of record, for her cause of action against Defendants, states as follows:

**PARTIES, JURISDICTION AND VENUE**

1.

Hilario Velasquez and Sarah Garrett are brother and sister. VELASQUEZ is a resident of Lexington, Dawson County, Nebraska. GARRETT is a resident of Cozad, Dawson County, Nebraska.

2.

Sergeant John Peden is a law enforcement officer of the City of Cozad Police Department. He is sued in his individual and official capacities. DOES 1 – 5 are believed to law enforcement officers of the City of Cozad Police Department, and are also sued in their individual and official capacities. The City of Cozad is a Nebraska political subdivision.

3.

This action is brought pursuant to the provisions of 28 U.S.C. §§ 1331 and 1333, and 42 U.S.C. §§ 1983 and 1988. The proper venue for this action is the United States District Court for the District of Nebraska, because the action complained of occurred in Cozad, Dawson County, Nebraska.

4.

**FACTUAL BACKGROUND**

5.

These events took place on May 28, 2020, when GARRETT was preparing her home and backyard for a family gathering to celebrate her graduation from cosmetology school. VELASQUEZ was at GARRETT's house with his children, as was one of GARRETT's friends. VELASQUEZ was sitting in an outdoor swing and visiting with GARRETT while GARRETT was setting up items for a barbeque.

6.

SGT. PEDEN drove through an alley to GARRETT's home, looking for GARRETT and VELASQUEZ's other brother. SGT. PEDEN was not mistaken in who he was looking for; he knew VELASQUEZ was not the person he was seeking. With his firearm displayed, he demanded to know where GARRETT and VELASQUEZ' other brother was, and told GARRETT's young daughter to "get the hell out of here!"

7.

SGT. PEDEN and DOES then entered GARRETT's backyard through the gate, without permission. SGT. PEDEN told GARRETT's friend that she needed to leave, and told VELASQUEZ that he needed to leave. Neither GARRETT, GARRETT's friend nor

VELASQUEZ were doing anything illegal or aggressive. They were peacefully visiting together in preparation for a family gathering, while VELASQUEZ sat on a swing.

8.

VELASQUEZ answered, "my son is inside. I'm not going anywhere." GARRETT took out her phone and began to record the interaction.

9.

SGT. PEDEN ordered VELASQUEZ to "get up and leave!" VELASQUEZ again repeated, "my son's inside, I'm not going anywhere." VELASQUEZ did not swear, raise his voice or behave aggressively. He sat peaceably on the swing. SGT. PEDEN approached VELASQUEZ, aiming a Taser and again ordering him to "get up and leave!" The following video shows that SGT. PEDEN then assaulted VELASQUEZ with his Taser.

10.



In the video shown above, SGT. PEDEN shows no panic, fear or feelings of being threatened: this is not a "rapidly evolving situation" in which he must make a split-second decision to save his or a brother officer's life. He appears very comfortable in all of his actions, as shown on the video above.

11.

SGT. PEDEN and DOES then placed VELASQUEZ and GARRETT in custody, in front of their children, accused VELASQUEZ and GARRETT of harboring a fugitive and announced that they were taking VELASQUEZ and GARRETT to jail. SGT. PEDEN and DOES called the Nebraska Department of Health & Human Services to pick up GARRETT's children. When GARRETT's friend offered to watch GARRETT's children until GARRETT could bond out of jail, SGT. PEDEN and DOES refused, saying "you can't house all of those kids in your little house!"

12.

Finally, SGT. PEDEN and DOES relented, uncuffed GARRETT and issued her a citation instead of taking her to jail. But Defendants transported VELASQUEZ to jail and booked him, and GARRETT's friend had to bond him out.

13.

The Dawson County Attorney did not file any criminal charges against either VELASQUEZ or GARRETT arising from this incident.

**FIRST CAUSE OF ACTION**

**42 U.S.C. § 1983 – SGT. PEDEN AND DOES**

14.

GARRETT and VELASQUEZ had a right under the Constitution of the United States to be free from excessive force, from arrest without probable cause, from the abuse of power by law enforcement and to due process by law enforcement professionals.

15.

At all times relevant to this Complaint, SGT. PEDEN and DOES were acting under color of law – under the constitutions, statutes, administrative rules, customs, policies and usages of CITY, the State of Nebraska and the United States – and had assumed the responsibilities, activities, and rights involved in exercising their roles as members of CITY's professional staff.

16.

Defendants acted with deliberate indifference to VELASQUEZ's known and recognized constitutional and legal rights to due process and bodily integrity and to be free from excessive force and indifference to his rights.  Defendants actively participated in the deprivation of VELASQUEZ's constitutional rights.

17.

Just so, Defendants acted with deliberate indifference to GARRETT's known and recognized constitutional and legal rights to due process, equal protection and bodily integrity and to be free from indifference to her rights.  Defendants actively participated in the deprivation of GARRETT's constitutional rights.

18.

SGT. PEDEN and DOES' conduct, within their duties as a member of CITY's professional law enforcement staff, under color of state law, deprived VELASQUEZ and GARRETT of rights, privileges and immunities secured by the United States Constitution. Particularly, VELASQUEZ and GARRETT were deprived of their constitutional liberty interest in due process and bodily integrity and in freedom from excessive punishment and indifference to their rights.

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983 – CITY OF COZAD**

19.

CITY is charged with the responsibility and duty to protect and serve the public by properly hiring, training and controlling officers under its command, including PEDEN and DOES. This duty includes promulgation and enforcement of rules, regulation and training regarding the use of excessive force.

20.

CITY's duty includes a duty to train its professional law enforcement staff in the proper, improper and abusive use of weapons such as Tasers. It includes a duty to train its professional law enforcement staff to de-escalate tensions rather than attack and assault peaceful citizens. It includes a duty to train its professional law enforcement staff to never arrest without probable cause. It includes a duty to not enter the private property of citizens without their permission and consent unless there is an emergency, a warrant or the need for a welfare check.

21.

CITY failed to promulgate adequate training, rules and regulations relating to excessive force and the abuse of arrest powers, and further failed to instruct and train SGT. PEDEN and DOES in the appropriate methods for avoiding inappropriate and abusive use of excessive force and arrest powers.

22.

CITY established through tacit authorization or explicit instruction a policy or custom of allowing officers to commit uses of excessive force and/or abuse of arrest powers. That policy was enacted and enforced with deliberate indifference in the constitutional rights of persons effected thereby.

23.

CITY failed to properly train and control officers under its command, including SGT. PEDEN and DOES, and failed to ensure compliance with its training and regulations regarding the use of force and arrest without probable cause; that failure has resulted in a policy or custom of inadequate training on the subject of excessive force and arrest without probable cause.

24.

CITY's custom of failing to properly train and control officers under its command, including SGT. PEDEN and DOES, and its failure to ensure compliance with its training and regulations on use of force and arrest without probable cause, amounts to deliberate indifference to the rights of persons with whom CITY officers come into contact, including the rights of Plaintiffs herein.

25.

CITY's custom and policy of allowing abuse of force and arrest powers, and CITY's failure to properly train and control officers under its command, including SGT. PEDEN and DOES, was so reckless that misconduct involving excessive force was inevitable as of the date of the incident giving rise to this Complaint.

**PUNITIVE DAMAGES**

26.

In addition to compensatory damages, Plaintiffs hereby makes a claim for punitive damages against defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of Plaintiffs' civil rights, as alleged herein. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and

safety of others, including Plaintiffs. Defendants committed the acts and omissions alleged herein and subjected Plaintiffs to improper treatment. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

27.

The recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case. This instance of reckless and callous indifference to Plaintiffs' safety and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

## ATTORNEY'S FEES

28.

As a result of defendants' actions as alleged herein, Plaintiffs have been required to retain the services of attorneys and are entitled to a reasonable amount for attorney's fee pursuant to 42 U.S.C. § 1988 for those violations covered by the Civil Rights Act.

## DAMAGES

29.

The acts and omissions of Defendants as set forth above have resulted in damages to Plaintiffs, in these particulars:

A. Compensatory damages in an amount to be proven at trial, for VELASQUEZ's physical and mental pain and suffering, inconvenience and expense;

B. Compensatory damages in an amount to be proven at trial, for GARRETT's mental pain and suffering, inconvenience and expense;

C. Compensatory damages for the violation of Plaintiffs' rights under the federal and state Constitutions;

D. Punitive damages to punish and deter the reprehensible conduct alleged, and shown by video evidence, in this Complaint;

E. Attorneys' fees and expenses available under 42 U.S.C. § 1988; and

F. The costs of this action and such other and further relief as this Court deems equitable and proper.

**WHEREFORE,** Plaintiff prays for judgment against the defendants as follows:

A. Plaintiffs pray for damages in an amount which will fairly and justly compensate for their injuries and the violation of their civil rights, and other consequential damages flowing from the violations and torts set forth herein;

B. Punitive damages in an amount sufficient to adequately punish defendants and to deter future conduct of the type alleged in this Complaint;

C. For attorneys' fees pursuant to 42 U.S.C. § 1988; and

D. For the costs of this action and for such other and further relief as this Court deems equitable and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

VELASQUEZ and GARRETT request that this matter be tried to a jury in North Platte, Nebraska.

HILARIO VELASQUEZ and SARAH GARRETT, Plaintiffs,

By: /s/ *Maren Lynn Chaloupka*
Maren Lynn Chaloupka – NSBA # 20864
Chaloupka Holyoke Snyder Chaloupka &
  Longoria, P.C., L.L.O.
1714 Second Avenue
Post Office Box 2424
Scottsbluff, NE 69361
(308) 635-5000
mlc@chhsclaw.net